## MILHEIM ET AL. *v.* MOFFAT TUNNEL IMPROVEMENT DISTRICT ET AL.

ERROR TO THE SUPREME COURT OF THE STATE OF COLORADO.

No. 791. Motion to dismiss or affirm submitted February 20, 1923.— Decided June 11, 1923.

1. A federal question which requires analysis and exposition for its decision is not frivolous and withstands a motion to dismiss the writ of error. P. 716.
2. But a motion to affirm should be granted if the questions on which decision depends are so wanting in substance as not to need further argument. Rule 6, § 5. P. 717.
3. Determination of the judicial question whether a use is public or private is influenced by local conditions; and this Court, while enforcing the Fourteenth Amendment, should keep in view the diversity of such conditions and regard with great respect the judgments of the courts and the declaration of the legislature of a State as to what should be deemed a public use in the State. P. 717.
4. The construction and maintenance of a tunnel for railroad, telegraph and telephone lines, for the transmission of electric power, and the transportation of water and automobiles and other vehicles

(Colo. Laws, Ex. Sess., 1922, c. 2, p. 88), *held* a public use warranting the exercise of the state power of taxation. through assessments levied on the private lands benefited by the improvement, to aid in defraying its cost.   Pp. 717, 720.

5. A tunnel constructed and maintained by a State with the design of leasing it, at a just rental based on the cost, to a railroad corporation, for operation in the service of the public as part of its line, and of thus promoting the efficiency of the railroad as an important common carrier and of preventing its abandonment, is a public improvement for public purposes.   P. 718.

6. If a proposed improvement is one which a State has authority to make and pay for by assessments on property benefited, the legislature may determine by the statute imposing the tax what lands may be, and are in fact, benefited; and its determination is conclusive and cannot be assailed under the Fourteenth Amendment unless it is a flagrant. abuse and so arbitrary as to amount to a mere confiscation of particular property.   P. 721.

7. Where a Commission, authorized to appraise the benefits to be assessèd on lands to meet the cost of a public tunnel improvement, adopted a tentative *ad valorem* basis, subject to modification and correction before confirmation, *held,* that landowners who did not see fit to avail themselves of their opportunity to object and be heard, could not attack the appraisals as arbitrary in a suit for an injunction.   P. 722.

72 Colo. 268, affirmed.

ERROR to a decree of the Supreme Court of Colorado, affirming a decree of the State District Court, which dismissed the complaint, after full hearing, in a suit brought by landowners to enjoin proceedings taken for the assessment of their property to defray costs of a public tunnel improvement.

*Mr. Edwin H. Park* for Milheim et al., plaintiffs in error.

*Mr. Barnwell S. Stuart* for White et al., plaintiffs in error.

*Mr. Norton Montgomery* for defendants in error.   *Mr. Erskine Myer* and *Mr. David P. Howard* were also on the briefs.

MR. JUSTICE SANFORD delivered the opinion of the Court.

The defendants in error move to dismiss the writ of error or affirm the judgment.

This is a suit challenging the constitutionality of an act of the State of Colorado creating a tunnel improvement district (Sess. Laws, Ex. Sess., 1922, c. 2, p. 88), and the proceedings thereunder.

This act, which is known as the Moffat Tunnel Act, declares that to provide an avenue of communication by a transportation tunnel through the Continental Divide at or near James Peak will reduce the barrier to commercial intercourse between the eastern and western portions of the State, facilitate communication in all seasons, and promote the health, comfort, safety, convenience and welfare of the people of the State, and will be of especial benefit to the property in certain designated boundaries within which such tunnel is to be located. To that end it creates " The Moffat Tunnel Improvement District," a body corporate, comprising all of the territory thus designated, and being all or portions of nine counties east and west of the Divide, extending between and including the City and County of Denver on the east and Routt County in the northwestern corner of the State, a total distance of about two hundred and fifty miles. The District is to be managed by a Board, called the " Moffat Tunnel Commission," which is required to construct such a tunnel through the Divide, with its equipment and approaches, at about 9200 feet above sea level, in such manner that it may be used for standard gauge railroads, telegraph and telephone lines, the transmission of power, and the transportation of water, automobiles and other vehicles.

The Commission is authorized to issue District bonds to the amount of $6,720,000 to pay for the cost of the tunnel, expenses, and interest on the bonds during its construction; to maintain the tunnel; and to contract

with persons and corporations for its use for the specified purposes, without monopoly by any use, person or corporation, until its capacity has been reached, at annual rentals apportioned to the respective values of the separate uses, and constituting a fair and just proportion of the total amount required to pay interest on the bonds, provide for their retirement and maintain the tunnel; prior users to be reimbursed by subsequent users in an equitable proportion of the amount previously paid for retirement of the bonds and interest.

The Commission is authorized to levy special assessments upon all real estate within the District—except governmental property which is exempted—for the purpose provided in the act, such special assessments to be made in proportion to the benefits to each piece of real estate accruing by reason of the improvements and in accordance with the rules of apportionment adopted by the Commission. It may at any time appraise the benefits which will result to such several parcels of real estate from the organization of the District and the construction of the tunnel, and, after such appraisal of benefits, levy special assessments, to the extent of such benefits upon all such real estate; and may for such purposes adopt rules providing, *inter alia*, for notice and hearing to all owners affected thereby. And if the revenues from the tunnel are not sufficient to pay interest due on the bonds in any year, provide for their retirement, pay expenses and maintain the tunnel, in order to prevent the occurrence of a deficit, the Commission is required to levy special assessments sufficient in amount, annually if necessary, upon all such real estate, in the manner provided.

It is expressly declared that the special benefits accruing to the assessable real estate within the District are in excess of the cost of the improvements and of the assessments provided for against such real estate.

In each year in which an assessment is made the Commission is required to appoint a time and place at which it will hear objections to the assessments, giving prior notice thereof by publication in two issues a week apart in a newspaper of general circulation published in each county. Any real estate owner claiming that his property has been assessed too highly, erroneously or illegally, may before such hearing file written objections to such assessment. At the hearing the Commission shall hear such evidence as may be offered concerning the correctness or legality of such assessments, and may modify or amend the same. Any property owner may appeal from the finding of the Commission as to such assessments to the district court of the county; but the court shall not disturb the findings of the Commission unless manifestly disproportionate to the assessments imposed upon other property in the District. The findings of the Commission if not appealed from, or the findings of the district court in case of an appeal, shall be final and conclusive evidence that such assessments have been made in proportion to the benefits conferred upon each tract of real estate by reason of the improvements, and constitute a lien thereon until paid.

The Commission, having been duly organized under the act, fixed the definite location of the tunnel, adopted preliminary plans for its construction in such manner as to provide for the various specified uses, estimated its cost, and resolved to issue District bonds in the authorized amount to pay for its construction. After making an investigation and examination of the real estate in the District, and taking the testimony of a great many witnesses from all parts of the District, engaged in various kinds of business, it determined the aggregate value of the real estate within the District subject to assessment to be $298,544,996—mainly in accordance with the assessed valuations for taxes—and further determined, sub-

ject to correction and confirmation after hearing the property owners affected, that the value of each parcel of such real estate would by reason of the organization of the District and the construction of the tunnel be increased at least to the extent of fifteen per cent.  And it thereupon appraised the benefits to the several parcels of such real estate at such percentage of their value, as the basis of special assessments to be thereafter made under the provisions of the act.  It also fixed a time and place at which it would hear objections filed by any property owner to the appraisal of benefits thus made, upon evidence and argument, before confirmation thereof, and gave public notice of such hearing by publication in the manner specified in the act.  This notice recited the proceedings which the Commission had taken, including the appraisal of benefits which it had made as the basis for special assessments, and stated that any appraisal of benefits found upon such hearing to be incorrect or inequitable, would be modified or amended, and that, after making all proper corrections, the appraisals would be confirmed.

Thereupon, before the date set for such hearing, two of the plaintiffs in error, owning lands within the District, without filing with the Commission any objections to the appraisal of benefits, filed their complaint in a District Court of the State, in behalf of themselves and all similar landowners, against the Improvement District and the Tunnel Commission; alleging, *inter alia,* that the tunnel was not intended as a public highway for the use of the general public, but for the benefit of the Denver & Salt Lake Railroad, commonly known as the Moffat Road; that the benefits to their real estate and the other real estate in the District had been arbitrarily appraised and that no special benefits would accrue to their property or other property similarly situated; that the act and the proceedings taken and threatened by the Commission

thereunder violated various provisions of the state con-
stitution and would deprive them of their property with-
out due process in violation of the Fourteenth Amend-
ment; and praying that the defendants be enjoined from
proceeding with the enforcement of the act and that all
the proceedings of the Commission be declared null and
void. The defendants in their answers denied these alle-
gations. The other plaintiffs in error, also owning lands
within the District, who likewise had filed no objections
with the Commission, subsequently intervened as plain-
tiffs in the action.

The case was heard by the District Court upon the
pleadings and proof. The issues, both of fact and law,
including those relating to the appraisal of benefits, were
found for the defendants; and the complaint was accord-
ingly dismissed.

Upon writ of error taken, the Supreme Court of Colo-
rado sustained the District Court in all respects and
affirmed its judgment. 72 Colo. 268.

The landowners urge here, as grounds of error, in sub-
stance, that the act and the proceedings taken and per-
mitted thereunder violate the Fourteenth Amendment in
that: (a) the purpose of the act is not public in the
sense warranting the exercise of the power of taxation,
but is essentially private; (b) the act authorizes the im-
position of the entire taxes upon the lands within the
District, without regard to their relation to the tunnel or
the benefit to be derived from it, and, there being no
special benefits to such lands justifying such taxation,
such classification is entirely arbitrary; and (c) the Com-
mission has arbitrarily and unreasonably adopted an *ad
valorem* basis for the appraisal and apportionment of
benefits to the several parcels of land within the Dis-
trict, without reference to the actual benefits to each.

The federal question presented, being one which re-
quires analysis and exposition for its decision, is not friv-

olous; and the motion to dismiss the writ of error is accordingly denied. *Louisville Railroad* v. *Melton,* 218 U. S. 36, 39.

The motion to affirm the judgment should, however, be granted if the questions on which the decision depends are found to be so wanting in substance as not to need further argument. Rule 6, § 5; *Hodges* v. *Snyder,* 261 U. S. 600, and cases therein cited.

1. *Public Purpose.* The nature of a use, whether public or private, is ultimately a judicial question. However, the determination of this question is influenced by local conditions; and this Court, while enforcing the Fourteenth Amendment, should keep in view the diversity of such conditions and regard with great respect the judgments of state courts upon what should be deemed public uses in any State. *Rindge Co.* v. *Los Angeles, ante,* 700, and cases therein cited. And like respect should be accorded to the declarations of the legislative body of the State. *Fallbrook Irrigation District* v. *Bradley,* 164 U. S. 112, 160. Here the legislature, familiar with the local conditions, has declared that the construction of the tunnel will benefit the people of the State; and both the local court of the State and its Supreme Court have held its construction to be for a public purpose.

It is urged by the landowners that the tunnel, considered as an isolated transportation unit, will serve no useful public purpose. This is obvious, but not to the point. It is intended to furnish an avenue or highway which shall be leased to public transportation agencies. A structure intended for such use is unquestionably a public improvement for a public use. Thus subway tunnels constructed by municipalities for lease to street railway and rapid transit lines for use as common carriers are public improvements for public purposes, for which the power of taxation may be exercised. *Sun Printing Co.* v. *City of New York,* 152 N. Y. 257, 265; *Prince* v.

*Crocker,* 166 Mass. 347, 361; *Browne* v. *Turner,* 176 Mass. 9, 12; *Larsen* v. *San Francisco,* 182 Cal. 1, 9. And see, by analogy, as to ship canals, *Cook* v. *Port of Portland,* 20 Oreg. 580.

They, however, contend that the tunnel must be deemed for a private, rather than for a public purpose, because it is located so as to be practically a part of the line of the Moffat Road, and is intended for its use, the real object of the act being, as expressed by the Governor, to save this railroad to the people of the State.[1] There is virtually no denial of this; and evidently this was the motive which led to the passage of the act and is the primary purpose for which the tunnel is to be constructed. This, however, is not a private purpose. The use of the tunnel by the Moffat Road will be for a beneficial public purpose. This railroad runs from Denver, on the east of the Continental Divide, to Routt County in the northwestern corner of the State, a distance of 255 miles. It crosses the Divide by a circuitous route above this tunnel, with steep grades and heavy curves. In the winter seasons this portion of its line is almost impassable. Its operations result in heavy losses, and it is now in an embarrassed financial condition and unable to build the tunnel. Without the use of the tunnel, the railroad must, it seems, be abandoned; and this avenue of communication between different portions of the State will be lost. The use of the tunnel will reduce the elevation, grades and curvature of the railroad, shorten its line about

---

[1] The Governor, in his message to the special session of the legislature which passed this act, in stating the two matters for which he had called the session, said: " Conditions have arisen which threaten the complete abandonment of a transportation line upon which several counties of the State depend, and your immediate action authorizing the issuance of bonds for the construction of a tunnel through the mountain range is necessary if the Moffat railroad is to be saved to the people of this State."

23 miles, and save it large amounts annually. Evidently the preservation of this railroad, a common carrier of persons and property, as a means of communication between the eastern and northwestern portions of the State, is a matter of great public importance; and a tunnel enabling it to provide quicker and cheaper transportation during all seasons of the year will greatly promote the public welfare.

Even if this act specifically directed that the tunnel be leased to the Moffat Road for railroad purposes (a just rental based on the cost of constructing and maintaining the tunnel being provided), as the tunnel would be operated by the railroad as a public highway for the carriage of passengers and freight, it would be a public improvement for a public use. The test of the public character of an improvement is the use to which it is to be put, not the person by whom it is to be operated. See *Mt. Vernon-Woodberry Cotton Duck Co.* v. *Alabama Interstate Power Co.*, 240 U. S. 30, 32. A subway tunnel constructed by a city under an act authorizing its construction for the specific purpose of being leased to a designated rapid transit company, is a lawful public improvement for a public use. *Browne* v. *Turner, supra,* pp. 12, 13. As a railroad is a highway for public use, although owned by a private corporation, a State may impose or authorize a tax in aid of its construction and in furtherance of such public use. *Olcott* v. *Supervisors,* 16 Wall. 678, 695-696; *Pine Grove* v. *Talcott,* 19 Wall. 666, 676, 678; *Wisconsin Railroad* v. *Jacobson,* 179 U. S. 287, 297; *Donovan* v. *Pennsylvania Co.,* 199 U. S. 279, 292, 293. " Whether the use of a railroad is a public or a private one depends in no measure upon the question who constructed it or who owns it. . . . No matter who is the agent, the function performed is that of the State. Though the ownership is private the use is public. . . . If there be any purpose for which taxation would

seem to be legitimate it is the making and maintenance of highways. They have always been governmental affairs, and it has ever been recognized as one of the most important duties of the State to provide and care for them. . . . When, therefore, it is settled that a railroad is a highway for public uses, there can be no substantial reason why the power of the State to tax may not be exerted in its behalf." *Olcott* v. *Supervisors, supra,* pp. 695, 696. " Though the corporation was private, its work was public, as much so as if it were to be constructed by the State." *Pine Grove* v. *Talcott, supra,* p. 676. The use of a spur track is none the less public because it is located to reach a private industry whose proprietors contribute to the cost. *Hairston* v. *Danville Railway,* 208 U. S. 598, 608. So here, although this tunnel be designed for lease to the Moffat Road, it will be a highway for public uses, as much so as if it were operated by the State, and a public improvement for public purposes.

Furthermore, while the saving of the Moffat Road to the people of the State seems to have been the prime motive which induced the passage of the act, it specifically provides for the use of the tunnel by any and all railroads and other public utilities, to the extent of its capacity, each paying an annual rental apportioned to the respective values of the separate uses, and constituting a fair and just proportion of the total amount required to pay interest on the bonds, provide for their retirement and maintain the tunnel. And the evidence strongly indicates that the tunnel may and will be used, to like advantage, by the Denver & Rio Grande Railroad, extending from Denver to Salt Lake City, with a great shortening and improvement of its line. It will also serve as a means of transporting water from the Fraser River on the west of the Divide to the City of Denver, for telegraph and telephone lines and the transmission of power; and for the transportation of automobiles and vehicles,

which are now unable to cross the Divide during several months of the year. These are all public purposes of much importance.

We conclude that the purpose for which the tunnel is to be constructed is not private, but public, and such as warrants the exercise by the State of the power of taxation.

2. *Classification as to special benefits.* It is contended that no special benefits of a direct and immediate character will accrue from the tunnel to the lands lying within the District, as distinguished from the other lands in the State, and that hence the classification made by the act in providing for the assessments solely upon the lands within the District, is entirely unreasonable and arbitrary. It is well settled, however, that if a proposed improvement is one which the State has authority to make and pay for by assessments on property benefited, the legislature in the exercise of the taxing power has authority to determine by the statute imposing the tax, what lands may be and are in fact benefited by the improvement; and if it does so, its determination is conclusive upon the owners and the courts and cannot be assailed under the Fourteenth Amendment unless it is wholly unwarranted and a flagrant abuse, and by reason of its arbitrary character is mere confiscation of the particular property. *Spencer* v. *Merchant,* 125 U. S. 345, 356; *Fallbrook Irrigation District* v. *Bradley, supra,* p. 174; *Wagner* v. *Baltimore,* 239 U. S. 207, 218, 220; *Houck* v. *Little River Drainage District,* 239 U. S. 254, 262, 265; *Branson* v. *Bush,* 251 U. S. 182, 190.

The legislature not only provided for the assessment of the lands within the District, but specifically declared that the tunnel would be of especial benefit to such lands and that the special benefits accruing to them are in excess of the cost of the tunnel and of the assessments provided for against them.

The District consists of the City and County of Denver on the east; a strip of land from six to eight miles in width extending through four counties on both sides of the Moffat Road to the crest of the Divide; and three entire counties and a portion of another county, which are traversed and reached by the Moffat Road and extend to the northwestern corner of the State. In short, the District includes the lands contiguous to the Moffat Road. The lands lying in the strip extending 'from Denver to the Divide are mainly agricultural lands; those lying to the west of the Divide, while largely devoted to stock raising, have valuable timber, and the two counties lying farthest to the northwest have valuable coal deposits. The testimony in the trial court fairly indicates that the lands within this District, on both sides of the Divide, including those owned by the plaintiffs in error, will, generally speaking, by reason of their proximity to the Moffat Road and the increased facilities of transportation across the Divide by which the western counties may be able to market their products to the east and the eastern counties obtain an outlet to the northwest, receive special benefits from the operation of the tunnel, of a reasonably direct and immediate character, resulting in increased value of the lands, in excess of those received by other lands in the State, and that the legislative classification is, on the whole, substantially just and reasonable.

The legislature declared that there will be such special benefits. The trial court, familiar with local conditions, after hearing evidence on this question, found that there would be such special benefits and sustained the legislative classification; and the Supreme Court of the State has affirmed its action. To the extent that there may be inequalities in the benefits received by the several parcels of land within the District, they are to be apportioned by the Commission in the manner provided by the act, with a right of appeal to the local courts for the correction of errors in such apportionments.

And certainly, under all the circumstances, and regarding the District as a whole, the evidence does not justify us in setting aside the conclusion reached by the trial court upon the weight of the evidence, or in characterizing the action of the legislature in creating this separate District upon which the assessments should be made, as arbitrary, capricious or confiscatory. The legislative determination and classification must, accordingly, be upheld.

3. *Appraisal of benefits.* It is contended that the Commission arbitrarily adopted an *ad valorem* basis of appraisal for the apportionment of benefits to the several parcels of land within the District, without reference to the actual benefits to each. This argument erroneously assumes that the Commission had finally adopted such an *ad valorem* basis for its appraisal. This is not the case. It had merely adopted a tentative *ad valorem* basis, subject to modification and corrections, before final confirmation, after the hearing of objections filed by landowners; of which public notice was given. These landowners did not seek to have the Commission modify or correct this tentative basis of apportionment or file any objections to the appraisal of benefits to their properties. Presumably if the tentative appraisal was made on an erroneous basis it would have been modified upon a proper showing. Having failed to object to the tentative *ad valorem* basis adopted by the Commission or to appear before it for the purpose of obtaining modifications or corrections as to their lands before the final adoption of such basis, they have here no sufficient ground of complaint. Where a city charter gives property owners an opportunity to be heard before a board respecting the justice and validity of local assessments for proposed public improvements and empowers the board to determine such complaints before the assessments are made, parties who do not avail themselves of such opportunity cannot be heard to com-

plain of such assessments as unconstitutional. *Farncomb v. Denver*, 252 U. S. 7, 11.

The judgment of the Supreme Court of Colorado was plainly right; and as the questions presented do not require further argument, the alternative motion of the defendants in error is granted, and the judgment is

*Affirmed.*