74 So.2d 394 (1954)
226 La. 8
MILLER et al.
v.
POLICE JURY OF WASHINGTON PARISH.
No. 41823.
Supreme Court of Louisiana.
July 2, 1954.
*395 Carter, Erwin & Carter, Delos R. Johnson & Son, France W. Watts, Frankling, Jr., for plaintiffs-appellants.
James T. Burns, Covington, for appellee.
PONDER, Justice.
The plaintiffs, taxpayers of Washington Parish, brought suit against the Police Jury of Washington Parish, under the Declaratory Judgment Act, LSA-R.S. 13:4231-4246, attacking the constitutionality and legality of Act 426 of 1952 and the subsequent amendment to paragraph (b.2) Section 14 of Article 14 of the Constitution of the State of Louisiana which was approved by the voters at the November General Election of 1952. On hearing of the suit the lower court gave judgment rejecting the plaintiffs' demand and the plaintiffs have appealed.
Act 426 of 1952 was submitted to the people as a constitutional amendment and was approved and adopted by the voters at the November General Election in 1952 and is now paragraph (b.2) of Section 14 of Article 14 of the Constitution of this State which reads as follows:
"Any parish, ward or municipality of this State, in order to encourage the location of or addition to industrial enterprises therein may incur debt and issue negotiable bonds under the provisions of paragraph (a) of this (§ 14 (a)) of the Constitution and in accordance with the provisions of the existing laws relating to incurring debt and issuing bonds, and use such funds derived from sale of such bonds, which shall not be sold for less than par, or bear a greater rate of interest than six per centum per annum payable annually or semi-annually, to acquire industrial plant sites and other necessary property or appurtenances for and to acquire or construct industrial plant buildings located within such parish, ward or municipality, as the case may be, and may sell, lease or otherwise dispose of, by suitable and appropriate contract, to any enterprise locating or existing within such parish, ward or municipality, a plant site, appurtenances and plant building, or buildings, either, both or severally; provided that the bonds so issued shall not exceed in the aggregate twenty per centum of the *396 assessed valuation of the taxable property of such parish, ward or municipality to be ascertained by the last assessment for (of) parish, ward or municipality of (for) local purposes previous to incurring such indebtedness, nor shall such bonds run for a longer (period) than twenty five years from date thereof; provided further that any income or revenue accruing to such parish, ward or municipality from such contract shall be deposited in the sinking fund dedicated to the payment of any debt incurred herein; provided further, that before the calling and holding of an election to incur debt and issue bonds for such purpose, any existing similar and directly competing industry situated within such parish, ward or municipality, as the case may be, shall have first filed with the governing authority calling such election a written consent to the incurring of debt and issuing of bonds for such purpose of encouraging the location therein of such industrial enterprise; provided further, that before calling an election to vote on incurring debt and issuing bonds to carry out any plan to encourage the location of or additions to industrial enterprise, the State Bond and Tax Board and Board of Commerce and Industry or their successors in function, shall certify their approval of any proposed contract between such parish, ward or municipality and industrial enterprise to be aided, encouraged or benefited; provided further that a municipality may incur debt, issue negotiable bonds and use such funds derived from the sale of such bonds under the provisions of this paragraph to encourage the location of or addition to industrial enterprises in an adjoining area without the corporate limits of such municipality; provided further that the authority conferred herein on parishes, wards and municipalities shall apply with the same provisions on legally constituted industrial districts hereafter created which are hereby authorized, such districts may comprise a combination of or part of parishes, wards or municipalities, either, both or severally. This paragraph shall be self-operative, without any enabling Act.
"Said bonds shall be sold to the highest bidder, at a public sale, for not less than par and interest, after advertisement at least once a week, for not less than 30 days by said Public Body, reserving to said Public Body the right to reject any and all bids. In the event the Public Body rejects all bids, it shall have the right to re-advertise for new bids or to negotiate publicly with the bidding groups, and to sell the bonds on terms more advantageous than the best bid submitted.
"In the event that no bids are submitted, the Public Body shall have the right to sell the bonds on the best terms it can publicly negotiate, or to readvertise for new bids as provided herein. (As added, Acts 1952, No. 426, § 1, adopted November 4, 1952.)"
On September 26, 1953, the Police Jury of Washington Parish adopted a resolution calling an election to submit to the qualified taxpaying voters of the Parish the question of the issuance of $500,000 in bonds to run for twenty-five years and bearing interest at the maximum rate of 5% per annum for the purpose of acquiring a site and constructing and operating a milk processing plant and acquiring the necessary appurtenances for the operation of such plant, title to which to be in the public.
It is stated in the resolution that the principal occupation of the inhabitants of the Parish and their chief source of revenue is agriculture; that a substantial part of the agricultural lands of the Parish are devoted to dairying and the production of milk; that for a period of several years past the demand for milk production in the Parish has declined to the point that it is impossible to market the entire output of the milk which has resulted in the dumping of a great quantity of milk and inadequate prices for the remainder; that the foregoing situation seriously affects *397 the welfare of the inhabitants and has made it imperative that a remedy be sought; that the Police Jury is of the opinion that the entire output of the milk could be sold if it was processed; and that they have entered into a contract with the Louisiana-Mississippi Milk Producers Association whereby it agrees to lease such plant and pay rental sufficient to pay the principal and interest on the proposed bonds; that the agreement has been approved by the State Bond and Tax Board and the Board of Commerce and Industry; that the State Bond and Tax Board has approved the bonds in the event they are issued; and that there is no similar competing industry in the Parish.
The election was duly held on November 3, 1953 and a majority in number and amount of the qualified voters approved the issuance of the bonds.
The appellants contend that the constitutional amendment submitted and approved by the electorate of the State is invalid and of no effect because it was not shown by the legislative journal to have been approved by the House of Representatives as required by the Constitution. They cite no authority to support their contention. The contention is in effect based on the ground that the bill as amended was never set out in full on the journal of the House or the journal of the Senate in the form in which it was finally passed even though the bill and amendments were separately entered in full in the journals. This same question was only recently presented to this Court in the case of Miller v. Greater Baton Rouge Port Commission, 225 La. 1095, 74 So.2d 387, this Court rejected the contention because a reference sufficiently identifying the amendments to be acted upon having been entered on the journals was a sufficient compliance with Section 1 of Article 21 of the Constitution of Louisiana.
The appellants contend that the constitutional amendment, Paragraph (b.2) of Section 14 of Article 14 of the Constitution of Louisiana is invalid and of no effect because it authorizes the taking of private property and the taxation of property for private purposes in violation of Amendments V and XIV of the Constitution of the United States and Section 2 of Article 1 of the Constitution of Louisiana. In support of their contention they cite Citizens Savings & Loan Association of Cleveland Ohio v. City of Topeka, 20 Wall. 655, 87 U.S. 655, 22 L.Ed. 455. The cited case is not in point.
A Mississippi statute containing provisions similar to the constitutional amendment involved herein was contested on the ground that it violated the due process law and was held by the Supreme Court of Mississippi not to be violative of the due process law. Albritton v. City of Winona, 181 Miss. 75, 178 So. 799, 115 A.L.R. 1436. This case was appealed to the United States Supreme Court and the appeal was dismissed for want of a substantial Federal question citing: Jones v. City of Portland, 245 U.S. 217, 38 S.Ct. 112, 62 L.Ed. 252, L.R.A.1918C, 765, Ann.Cas.1918E, 660; Green v. Frazier, 253 U.S. 233, 40 S.Ct. 499, 64 L.Ed. 878; Milheim v. Moffat Tunnel Improv. Dist., 262 U.S. 710, 717, 43 S.Ct. 694, 67 L.Ed. 1194, 1199; Carmichael v. Southern Coal & Coke Co., 301 U.S. 495, 514, 515, 57 S.Ct. 868, 81 L.Ed. 1245, 1256, 1257, 109 A.L.R. 1327. See Allbritton v. City of Winona, Mississippi, 303 U.S. 627, 58 S.Ct. 766, 82 L.Ed. 1088.
In the Allbritton case a statute was involved but here we have a constitutional amendment. While we realize that there are cases in the jurisprudence of the Supreme Court of the United States that appear to hold a contrary view yet it would appear that the findings of the state court as to whether or not public interest is involved is accepted unless clearly unfounded. Green v. Frazier, supra; Jones v. City of Portland, supra. In Green v. Frazier, the case of Citizens' Saving & Loan Association v. City of Topeka, supra, was differentiated on the ground that there the undertaking was to aid private institutions by public taxation. As far back as the year 1920 it was pointed out in Green v. Frazier, supra, [253 U.S. 233, 40 S.Ct. 502], that the peculiar conditions *398 existing in a state, which are emphasized in an opinion of its highest court, if the state sees fit to enter upon enterprises with the sanction of its constitution, its legislature and its people, that the Supreme Court of the United States were not prepared to say that it was within their authority, in enforcing the observance of the fourteenth amendment to set aside such action by judicial decision and it was further pointed out that "In many instances states and municipalities have in late years seen fit to enter upon projects to promote the public welfare which, in the past have been considered entirely within the domain of private enterprise." As pointed out in the Albritton case (Albritton v. City of Winona, supra), there is a growing appreciation of public needs and a necessity of finding ground for a rational compromise between individual rights and public welfare. Reference was made therein to the words of John Marshall that a Constitution is:
"`* * * intended to endure for ages to come, and, consequently, to be adapted to the various crises of human affairs. To have prescribed the means by which government should, in all future time, execute its powers, would have been to change, entirely, the character of the instrument, and give it the properties of a legal code. It would have been an unwise attempt to provide, by immutable rules, for exigencies which, if foreseen at all, must have been seen dimly, and which can be best provided for as they occur.' McCulloch v. [State of] Maryland, 4 Wheat. 316, 415, 4 L.Ed. 579." [181 Miss. 75, 178 So. 806.]
The enterprise involved herein is sanctioned by the Constitution, the Legislature, the Police Jury, the governing authority of the Parish, and the people. The findings of the Police Jury are supported by all the evidence in this case and there is no evidence to the contrary in the record. The title to the property is to remain in the public. The primary purpose of the enterprise is to relieve an economic condition affecting the welfare of the people of the entire Parish. The leasing of the property is only incidental to the purpose sought to be gained. The enterprise is unquestionably fraught with public interest. The public interest is more apparent in this case than in the case of Albritton v. City of Winona, supra. In the Albritton case the right to establish a hosiery, knitting and wearing apparel manufacturing plant in the City of Winona to afford employment to the people of that city was involved but in this case the welfare of the people of the entire Parish is affected and the waste of an essential product will be prevented.
The appellants contend that the constitutional amendment is so vague that it cannot be enforced and that it would require additional legislation before it could be applied. The contention is based on the grounds that the manner in which the districts shall be created, governed and issue bonds is not provided for; that the words "existing similar and directly competing industry" are incapable of definition; and that it authorizes issuance of bonds by words without providing a governing authority. The appellants do not cite any authority in support of their contentions. We see no merit in them. The Parish is authorized to issue the bonds and the Police Jury is the governing authority of the Parish. The words "existing similar and directly competing industry" have a well defined and accepted meaning. The bonds herein are not issued by a ward and there is no necessity for us to go into the question as to who would be the governing authority if bonds were issued by a ward.
The appellants contend that there are dairies and plants which perform some of the functions of the proposed processing plant and the consent of these competing industries were not obtained. This contention is refuted by the resolution of the Police Jury and the evidence in this case.
The appellants contend that the issuance of bonds to acquire machinery *399 and equipment is not authorized by the constitutional amendment or the proposition submitted to the voters. We see no merit in this contention because the acquisition of the necessary appurtenances for the operation of the plant is authorized and this would include the machinery and equipment.
The appellants contend there has been no showing made by the Police Jury that there has been a construction contract entered into or showing made that the plant can be constructed and equipped with the amount of money available from the proceeds of the bonds. We are in no position to say whether or not the plant can be constructed and equipped with the amount of money derived from the sale of the bonds. The record contains no evidence to the effect that the plant cannot be constructed and equipped with the available funds. The Police Jury must have been satisfied that the amount was sufficient or otherwise they would have provided for a larger bond issue.
Appellants contend that the provision for the payment of a premium of $30 each for the redemption of the bonds will increase in indebtedness beyond the amount authorized at the election or else increase the interest rate beyond that authorized (4%) by the State Bond and Tax Board. Their contention is based on the ground that the bonds cannot be validly issued containing the provision for their redemption at a premium. There is no obligation on the part of the Police Jury to pay any premium on the bonds unless the bonds are called for redemption. If the Police Jury should at some future time decide to redeem the bonds it could do so from the funds it had on hand at that time and the premium could be paid from such funds. So long as there is a legitimate way by which the bonds can be redeemed and the premium paid, we must presume that the Police Jury will follow it.
For the reasons assigned, the judgment appealed from is affirmed at appellants' cost.
HAWTHORNE, Justice (dissenting).
There does not seem to be any real dispute between the plaintiffs and the defendant in this litigation, as it appears that both desire the same result, that is, a decision by this court decreeing to be valid the provision of the Louisiana Constitution and the bonds issued pursuant thereto. The record reveals that the bond attorneys will not approve the validity of the bonds and they cannot be sold until this court has declared valid the provisions of the Louisiana State Constitution under which they were issued. Hence this suit. Apparently, therefore, this court's decree will end the matter, which is indeed regrettable, for we have here involved a serious federal question, that is: Does a tax levied under the provisions of the Louisiana Constitution violate the provisions of the United States Constitution? This should be answered by the United States Supreme Court, as a decision by this court on that question is not decisive.
In my view Article XIV, § 14(b.2), of the Louisiana Constitution is invalid and of no effect because it authorizes taxation for private purposes in violation of the Fourteenth Amendment of the Constitution of the United States. The Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law". It is now well settled that the imposition of taxes by a state for private purposes violates the due process clause of the Fourteenth Amendment to the United States Constitution. Green v. Fraizer, 253 U.S. 233, 40 S.Ct. 499, 64 L.Ed. 878; Fallbrook Irrigation District v. Bradley, 164 U.S. 112, 17 S.Ct. 56, 41 L.Ed. 369; Milheim v. Moffat Tunnel Improvement District, 262 U.S. 710, 43 S. Ct. 694, 67 L.Ed. 1194; Cochran v. Louisiana State Board of Education, 281 U.S. 370, 50 S.Ct. 335, 74 L.Ed. 913; Carmichael v. Southern Coal & Coke Co., 301 U.S. 495, 57 S.Ct. 868, 81 L.Ed. 1245.
Article XIV, § 14(b.2), of the Louisiana Constitution authorizes any municipality or ward or parish of this state to incur debt and to issue negotiable bonds for the repayment *400 of which the political subdivision shall annually levy a tax of a sufficient amount to pay the principal and interest of the bonds maturing each year. In other words, the full faith and credit of the political subdivision issuing such bonds is pledged.
Under the express provisions of the constitutional amendment adopted in 1952, for what purpose may the debt be incurred, the bonds issued, and a tax levied for their payment? The answer is found in the amendment itself, which provides that the purpose is "to encourage the location of or addition to industrial enterprises" within the governmental subdivision.
To encourage the location of a milk processing plant in Washington Parish, that parish has levied a tax for the repayment of the principal and interest on a half-million-dollar bond issue. The proceeds derived from the sale of the bonds are to be used to build such a plant according to the plans and specifications of a private corporation, and the plant when so constructed will be under the exclusive control of such private corporation and operated by such corporation for its own profit and with no obligation to serve the public. The only justification for the imposition of the tax as disclosed by the record is merely the hope that the private industry so conducted will provide a market for the surplus milk produced by the dairy farmers of that parish.
The general rule is that encouragement or promotion of a specific industrial enterprise carried on by private ownership is not a public purpose for which taxes may be imposed or public money appropriated. Citizens' Savings & Loan Association of Cleveland v. City of Topeka, 20 Wall. 655, 87 U.S. 655, 22 L.Ed. 455; Ferrell v. Doak, 152 Tenn. 88, 275 S.W. 29, 46 A.L.R. 590; Bolton v. Wharton, 163 S.C. 242, 161 S.E. 454, 86 A.L.R. 1101; Annotation, 112 A.L. R. 571, and cases cited therein; 38 Am.Jur., Municipal Corporations, sec. 402, p. 94.
The amendment to the Louisiana Constitution does not pretend to authorize a tax for a public purpose. The constitutional amendment, quoted in full in the majority opinion, does not provide that the governmental subdivision will retain any control over the benefitted enterprise or share in the profits. In all matters of management, including wages to be paid, the sale and price of its products, the earnings to be withdrawn by private owners, continuance of operation, or disposition of the business, the public will have no voice. Furthermore, the constitutional provision imposes no duty on the private industry to serve the public, since its only purpose is to encourage the location of or addition to industrial enterprises therein. On the face of the provision, therefore, no public purpose is to be served.
As further corroboration that the tax is to be levied for a private purpose only is the provision that the consent of competing private industries has to be obtained before bonds can be issued to encourage the location of a private industry. The intent only to aid private industry is shown also by the provision that the governmental subdivision may sell, lease, or otherwise dispose of the plant site by appropriate contract. Under this the plant could even be disposed of by donation.
Indirect benefits may result to the local public by the encouragement of the location of private industry with public money, but this is no more than the benefit that would be derived from any private industry, and such indirect benefits are not sufficient to cause the tax to be levied for a public purpose. As was said in Citizens' Savings & Loan Association of Cleveland v. City of Topeka, supra: "To lay, with one hand, the power of the government on the property of the citizen, and with the other to bestow it upon favored individuals to aid private enterprises and build up private fortunes, is none the less a robbery because it is done under the forms of law and is called taxation. This is not legislation. It is a decree under legislative forms." See also Ferrell v. Doak, supra, and Bolton v. Wharton, supra.
Our own state Constitution contains also a due process clause in Article I, § 2. *401 More specifically Article IV, § 12, expressly prohibits the funds of the state or any political subdivision from being loaned or granted for any private person or corporation, and Article X, § 1, permits taxes to be levied for public purposes only. The framers of the 1952 constitutional amendment evidently incorporated Article XIV, § 14(b.2), in the Constitution in order to overcome any objection that it conflicts with the above provisions, under the belief that it would be deemed an exception to these expressed prohibitions against taxation for private purposes. They overlooked apparently the federal constitutional provision which also prohibits the state from levying a tax for private purposes.
The majority opinion relies principally on the case of Albritton v. City of Winona, 181 Miss. 75, 178 So. 799, 115 A.L.R. 1436. This case is an isolated one and is contrary to the established jurisprudence on this subject, cited supra. Moreover, the holding in that case is not pertinent or controlling here. The Mississippi statute in question there was enacted in 1936 while this country was still attempting to overcome the effects of a depression. That statute stated in its preamble:
"Whereas, there exists an acute, economic emergency for which the requisite remedy is the balancing of agriculture with industry as herein done, said emergency having decreased Mississippi's industrial enterprises so that many of her citizens are on relief and are leaving the state; and
"Whereas, the purchasing power of her citizens has been seriously impaired and agricultural activities have been curtailed by reason of conditions for which her citizens are in no way responsible, and the markets for her principal export, cotton, have been threatened and are being occupied by other nations; and
"Whereas, the sole remedy for saving agriculture in Mississippi is to develop industry so that her citizens may be afforded a livelihood and not be forced to seek gainful employment outside of her borders;
* * * * * *
"Whereas, it is deemed necessary by the legislature of the state of Mississippi to relieve such existing, emergency conditions and present public policy demands a program to encourage and to promote agriculture and industry, and to balance agricultural development with industrial expansion for the promotion of the general public welfare * * *." (Italics mine.) Laws 1936 Miss., 1st Ex.Sess., c. 1.
Under these circumstances the Mississippi court found that the welfare of the people of the state demanded this legislation, and under the provisions of the statute, therefore, it was levied for a public purpose. It is true that the United States Supreme Court denied writs in the case, citing several cases as authority that no substantial federal question was involved. An examination of the cited cases shows that the Supreme Court of the United States considers that local authority, legislative and judicial, has better facilities and is in a better position to know whether conditions exist which make statutes ones in the public interest. For this reason it gives the highest respect to the judgment of the highest court of the state upon what is a public use.
In the instant case, however, the constitutional provision does not purport in any way to be levying a tax for a public purpose, but on the contrary shows that its sole purpose in levying the tax is to encourage the location of private industry. There is nothing in this case, therefore, to take it out of the accepted rule that encouragement or promotion of a specific industrial enterprise carried on by private ownership is a private purpose for which taxes may not be imposed.
Under this provision sugar mills could be built with public money in the sugar belt, rice mills in the rice belt, pulp and paper mills in the forested sections, cotton gins in the cotton sections, and all of *402 these would be controlled and operated by private industry with no obligation to serve the public.
Although the increasing of industry is always desirable in a state, there is not a hint of any economic condition in this state that demands the spending of public money and the imposition of taxes for this purpose.
I respectfully dissent.