HAWTHORNE, Justice
(dissenting).
There does not seem to be any real dispute between the plaintiffs and the defendant in this litigation, as it appears that both desire the same result, that is, a decision by this court decreeing to be valid the provision of the Louisiana Constitution and the bonds issued pursuant thereto. The record reveals that the bond attorneys will not approve the validity of the bonds and they- *23 cannot be sold until this court has declared valid the provisions of the Louisiana State Constitution under which they were issued. Hence this suit. Apparently, therefore, this court’s decree will end the matter, which is indeed regrettable, for we have here involved a serious federal question, .that is: Does a tax levied under the provisions of the Louisiana Constitution violate the provisions of the United States Constitution? This should be answered by the United States Supreme Court, as a decision by this court on that question is not decisive.
In my view Article XIV, § 14(b.2), of the Louisiana Constitution is invalid and of no> effect because it authorizes taxation for private purposes in violation of the Fourteenth Amendment of the Constitution of the United States. The Fourteenth Amendment provides that no state shall “deprive any person of life, liberty, or property, without due process of law”. It is now well settled that the imposition of taxes by a state for private purposes violates the due process clause of the Fourteenth Amendment to the United States Constitution. Green v. Fraizer, 253 U.S. 233, 40 S.Ct. 499, 64 L.Ed. 878; Fallbrook Irrigation District v. Bradley, 164 U.S. 112, 17 S.Ct. 56, 41 L.Ed. 369; Milheim v. Moffat Tunnel Improvement District, 262 U.S. 710, 43 S.Ct. 694, 67 L.Ed. 1194; Cochran v. Louisiana State Board of Education, 281 U.S. 370, 50 S.Ct. 335, 74 L.Ed. 913; Carmichael v. Southern Coal & Coke Co., 301 U.S. 495, 57 S.Ct. 868, 81 L.Ed. 1245.
.. Article XIV, §-14(b.2), of the Louisiana Constitution authorizes any municipality or ward or parish of this state to incur debt and to issue negotiable bonds for the repayment of which the political subdivision shall annually levy a tax of a sufficient amount to- pay the principal and interest of the bonds maturing each year. In other words, the full faith and credit of the political subdivision issuing such bonds is pledged.
Under the express provisions of the constitutional amendment adopted in 1952, for what purpose may the debt be incurred, the bonds issued, and a tax levied for their payment? The answer is found in the amendment itself, which provides that the purpose is “to encourage the location of or addition to industrial enterprises” within the governmental subdivision.
To encourage the location of a milk processing plant in Washington Parish, that parish has levied a tax for the repayment of the principal and interest on a half-million-dollar bond issue. The proceeds derived from the sale of the bonds are to be used to build such a plant according to the plans and specifications of a private corporation, and the plant when so constructed will be tinder the exclusive control of such private corporation and operated by such corporation for its own profit and with no obligation to serve the public. The only justification for the imposition of the tax: as disclosed by the record is merely the’ hope that the private industry so conducted will pro *25 vide a market for the surplus milk produced by the dairy farmers of that parish.
The general rule is that encouragement or promotion of a specific industrial enterprise carried on by private ownership is not a public purpose for which taxes may be imposed or public money appropriated. Citizens’ Savings & Loan Association of Cleveland v. City of Topeka, 20 Wall. 655, 87 U.S. 655, 22 L.Ed. 455; Ferrell v. Doak, 152 Tenn. 88, 275 S.W. 29, 46 A.L.R. 590; Bolton v. Wharton, 163 S.C. 242, 161 S.E. 454, 86 A.L.R. 1101; Annotation, 112 A.L.R. 571, and cases cited therein; 38 Am.Jur., Municipal Corporations, sec. 402, p. 94.
The amendment to the Louisiana Constitution does not pretend to authorize a tax for a public purpose. The constitutional amendment, quoted in full in the majority opinion, does not provide that the governmental subdivision will retain any control •over the benefitted enterprise or share in the profits. In all matters of management, including wages to be paid, the sale and price of its products, the earnings to be ■withdrawn by private owners, continuance •of operation, or disposition of the business, the public will have no' voice. Furthermore, the constitutional provision imposes no duty •on the private industry to serve the public, since its only purpose is to encourage the .location of or addition to industrial enterprises therein. On the face of the provision, therefore, no public purpose is to be served.
As further corroboration that the tax is to be levied for a private purpose only is the provision that the consent of competing private industries has to be obtained before bonds can be issued to encourage the location of a private industry. The intent only to aid private industry is shown also by the provision that the governmental subdivision may sell, lease, or otherwise dispose of the plant site by appropriate contract. Under this the plant could even be disposed of by donation.
Indirect benefits may result to the local public by the encouragement of the location of private industry with public money, but this is no more than the benefit that would be derived from any private industry, and such indirect benefits are not sufficient to cause the tax to be levied for a public purpose. As was said in Citizens’ Savings & Loan Association of Cleveland v. City of Topeka, supra: “To lay, with one hand, the power of the government on the property of the citizen, and with the other to bestow it upon favored individuals to aid private enterprises and build up private fortunes, is none the less a robbery because it is done under the forms of law and is called taxation. This is not legislation. It is a decree under legislative forms.” See also Ferrell v. Doak, supra, and Bolton v. Wharton, supra.
Our own state Constitution contains also a due process clause in Article I, § 2. More specifically Article IV, § 12, expressly prohibits the funds of the state or any *27 political subdivision from being loaned or granted for any private person or corporation, and Article X, § 1, permits taxes to be levied for public purposes only. The framers of the 1952 constitutional amendment evidently incorporated Article XIV, § 14(b.2), in the Constitution in order to overcome any objection that it conflicts with the above provisions, under the belief that it would be deemed an exception to these expressed prohibitions against taxation for private purposes. They overlooked apparently the federal constitutional provision which also prohibits the state from levying a tax for private purposes.
The majority opinion relies principally on the case of Albritton v. City of Winona, 181 Miss. 75, 178 So. 799, 115 A.L.R. 1436. This case is an isolated one and is contrary to the established jurisprudence on this subject, cited supra. Moreover, the holding in that case is not pertinent or controlling here. The Mississippi statute in question there was enacted in 1936 while this country was still attempting to overcome the effects of a depression. That statute stated in its preamble:
“Whereas, there exists an acute, economic emergency for which the requisite remedy is the balancing of agriculture with industry as herein done, said emergency having decreased Mississippi’s industrial enterprises so that many of her citizens are on relief and are leaving the state; and
“Whereas, the purchasing power of her citizens has been seriously impaired and agricultural activities have been curtailed by reason of conditions for ■ which her citizens are in no way responsible, and the markets for her principal export, cotton, have been threatened and are being occupied by other nations; and
“Whereas, the sole remedy for saving agriculture in Mississippi is to develop industry so that her citizens-may be afforded a livelihood and not be-forced to seek gainful employment outside of her borders;
* * * * * * “Whereas, it is deemed necessary by the legislature of the state of Mississippi to relieve such existing, emergency-conditions and present public policy-demands a program to encourage and. to promote agriculture and industry,, and to balance agricultural development with industrial expansion for the promotion of the general public welfare * * (Italics mine.) Laws. 1936 Miss., 1st Ex.Sess., c. 1.
Under these circumstances the Mississippi court found that the welfare of the-people of the state demanded this legislation, and under the provisions of the statute,, therefore, it was levied for a public purpose. It is true that the United States-Supreme Court denied writs in the case, citing several cases as authority that no-substantial federal question was involved. An examination of the cited cases shows-that the Supreme Court of the United States. *29 considers that local authority, legislative and judicial, has better facilities and is in a better position to know whether conditions exist which make statutes ones in the public interest. For this reason it gives the highest respect to the judgment of the highest court of the state upon what is a public use.
In the instant case, however, the constitutional provision does not purport in any way to be levying a tax for a public purpose, but on the contrary shows that its sole purpose in levying the tax is to encourage the location of private industry. There is nothing in this case, therefore, to take it out of the accepted rule that encouragement or promotion of a specific industrial enterprise carried on by private ownership is a private purpose for which taxes may not be imposed.
Under this provision sugar mills could be built with public money in the sugar belt, rice mills in the rice belt, pulp and paper mills in the forested sections, cotton gins in the cotton sections, and all of ■these would be controlled and operated by private industry with no obligation to serve the public.
Although the increasing of industry is .always desirable in a state, there is not a hint of any economic condition in this state that demands the spending of public money and the imposition of taxes for this purpose.
I respectfully dissent.