BAKER ET AL., ASSIGNEES, *v.* WHITE.

The judgment of a circuit court, reversing that of a district court and ordering a new trial, is not final; and this court has no jurisdiction to review it.

ERROR to the Circuit Court of the United States for the District of Connecticut.

*Mr. Charles E. Perkins* for the plaintiff in error.

*Mr. A. P. Hyde, contra.*

MR. JUSTICE MILLER delivered the opinion of the court.

The Odorless Rubber Company, being in an embarrassed condition, undertook to relieve itself by obtaining additional subscriptions to its capital stock. It was conceived, that, in order to do this, it was necessary that those holding the existing stock should submit to a reduction of its par value, as it was not really worth par at that time; and new subscribers could not be expected to take a stock which they knew to be below the value they were to pay for it. Accordingly, on the 10th June, 1872, at a meeting of the stockholders, " on motion of S. L. Warner, it was voted, that whereas the capital stock of this company now issued, and the assets of the same, have become impaired to the extent of thirty per cent on the whole amount of said stock, — to wit, the sum of $72,000.50, — therefore voted, that stock to the amount of $72,112.50 be called in and cancelled upon the books of this company."

At a former meeting it had been resolved that the capital stock of the company be increased to $200,000, or eight thousand shares.

The defendant, after these resolutions had been adopted, signed the following instrument, and set opposite his name two hundred and forty, as the number of new shares for which he subscribed: —

" We, the undersigned, hereby agree to take the number of shares of the capital stock of the Odorless Rubber Company placed opposite our respective names, and pay for the same as follows; to wit, $6.25 per share whenever cash subscriptions to the amount of $118,000 shall have been made, and the balance in equal monthly instalments of ten per cent each from the date of June 1, A.D. 1872. Said stock

to be fully paid whenever eighty-five per cent of the par value shall have been paid into the treasury of the company; it being understood that none of said subscriptions shall be valid or obligatory until at least said amount of $118,000 of stock shall have been subscribed as aforesaid, and that thirty per cent deduction is made on the old stock of this company, as per vote of stockholders June 10, 1872.

"Dated at Middletown, this tenth day of June, 1872."

He was elected a director, and acted as such for a short time, and paid his instalments regularly until he had paid $2,700. He then refused to pay any more; and, the corporation having been adjudged bankrupt, the plaintiffs, as assignees, brought the present suit to recover the unpaid instalments, amounting to $3,300.

Two defences were relied on by defendant: 1. That one of the conditions on which he agreed to pay was that thirty per cent of the old stock was to be deducted or extinguished, and this had not been done. 2. That the subscriptions had been obtained by fraudulent representations as to the condition of the company; that the whole proceeding was a fraudulent design to relieve the old stockholders of a broken corporation at the expense of the new subscribers; and that, as soon as he had learned enough of the condition of the company to become aware of this fraud, he abandoned the concern, and repudiated the contract.

This suit was brought in the District Court; and the judge of that court refused to charge the jury, when requested, that in the true construction of the subscription-paper, above quoted in full, the subscription was not obligatory until the thirty per cent reduction of old stock had been made, and also rejected evidence of the fraud in obtaining the defendant's subscription.

On a writ of error to the Circuit Court, where these matters were shown by a bill of exceptions taken in the District Court, the judgment of that court was reversed.

The Circuit Court rested its judgment on the construction of the subscription-paper; and as that is sufficient to dispose of the case, and as we concur in the view taken by that court, we shall only consider that question.

The counsel for plaintiffs in error construed the paper as if it read thus: —

"It being understood that none of the subscriptions shall be valid or obligatory until at least said amount of $118,000 of stock shall have been subscribed as aforesaid, and it being also understood that thirty per cent deduction is made on the old stock of this company, as per vote of stockholders June 10, 1872.

"Dated Middletown, the tenth day of June, 1872."

Reading it thus, they argue that the last clause, relating to the thirty per cent deduction, is only a representation of what was understood to be an existing fact at the time it was made, and not a condition like the one as to the amount of stock to be taken, without which the subscription was not obligatory.

It is possible so to construe the language of the instrument, if the surrounding circumstances demanded it. But to one who saw the paper for the first time, and knew nothing more, it would seem a forced, and not a natural, construction. If the word "that" just before "thirty per cent" were omitted in the original, the plain grammatical meaning would be, that the subscriptions were only obligatory in case the $118,000 of stock was subscribed, and the thirty per cent of the old stock called in or deducted.

We cannot give to the use of the word "that" such force as to destroy the natural and reasonable meaning which the sentence would have without it.

But when, leaving grammatical and verbal criticism, we look to the admitted surrounding circumstances of the case, what was meant is quite clear.

The paper bears the same date as the resolution to reduce the stock. That resolution did not profess to have the effect of reducing the stock of itself, but only declared that $72,-112.50 of said *stock be called in,* — a thing to be done in future; and the bill of exceptions shows that the directors accordingly made an effort to get the stockholders to surrender and cancel stock to that amount, but failed to get it done.

When a subscriber put his name to the agreement to take new stock, the obtaining of the $118,000, on which his subscription depended for its validity, was a thing to be accomplished in the future: and so, on the tenth day of June, — the date of this paper, — a subscriber, looking to these two things promised, but yet to be performed, said, "I subscribe, but it is

upon condition that I am only to be liable when they are performed; that is, when $118,000 new stock is subscribed, and when thirty per cent of the old stock is called in and cancelled, as per resolution of the company of this date."

We are of opinion that the Circuit Court properly construed this instrument; and, as it is not proved or asserted that this stock ever was so reduced, the defendant was not liable on that contract.

But, when we come to look for the judgment of the Circuit Court which should be affirmed on these considerations, we find that there was in that court no *final* judgment. There exists in the record only an order reversing the judgment of the District Court. But, supposing a more formal entry to have been made, it could only be that the judgment and verdict in the District Court be set aside, and a new trial awarded.

We have so repeatedly decided that such an order as this is not a final judgment from which a writ of error lies to this court, that it needs no further discussion. *Parcels* v. *Johnson*, 20 Wall. 653; *Macomb* v. *Commissioners of Knox County*, 91 U. S. 1.

But the case was fully argued by counsel on the merits. The court, in conference, came to the conclusion (which was unanimous) indicated in this opinion; and we have concluded to let the opinion accompany the only judgment which we can render on this record.                     *Writ of error dismissed.*