Johnson, J.
The constitutionality of two statutes is involved in these cases, viz: The act of April 2, 1908, now included in Sections 2962 to 2970, General Code, with the amendments thereto, and the act of April 28, 1913 (103 O. L., 833), which became effective August 12, 1913. As to the first statute the Hamilton county courts held it to be unconstitutional. They entertained the view that the case was ruled by Auditor of Lucas County v. State, ex rel. Boyles, 75 Ohio St., 114. In that case there was an effective expression of the invalidity of legislation requir *355 ing the expenditure of public funds raised by taxation, for a purely private purpose. The statute involved in that case provided that all male blind persons over the age of 21 years and all female blind persons over the age of 18 years, who had been residents of the state for five years and of the county for one year and had no property or means with which to support themselves, should be entitled to and receive not more than $25 per capita quarterly, from the county treasury, on the warrant of the county auditor authorized by the probate judge, and that under no condition or circumstance should the beneficiary lose his or her benefits or residence by or through removal to any home or institution for the blind not maintained by said county or state. In the analysis of that statute, the court held it to be not a statute making-provision for public relief to poor persons, but really an act providing for the giving of a bounty to a certain selected class of persons. It is pointed out in the opinion “that no provision is made in the act to insure the application of the money to the support of the individual, or to prevent him from becoming a public charge, or in any manner to control its use by him. The act does not direct that the payments shall continue during the lifetime of the beneficiary, nor does it limit the time, needs of the donee, or provide for any subsequent inquiry. It is an indeterminate gratuitous annuity, a gift pure and simple, and, being so, the legislature is without authority to make it from the public funds.”
In the law, which is included in Sections 2962 to 2969, General Code, whose validity is here in *356 question, the creation of a blind-relief commission is provided for, whose powers have, by amendment passed February 18, 1913, been conferred upon the commissioners of the several counties. Under this law any person of either sex who, by reason of loss of eyesight, is unable to provide himself with the necessities of life, who has not sufficient means of his own to maintain himself, and who, unless relieved as authorized by these provisions, would become a charge upon the public or upon those not required by law to support him, is entitled to its benefit, if he has become blind while a resident of the state and has been a resident of the county for one year. The law further provides for the surgical removal of blindness, where it is possible. Section 2967 provides that if the commission is satisfied upon testimony that the applicant is entitled to relief thereunder, it shall issue an order therefor, in such sum as it finds needed, not to exceed $150 per annum, and “such relief shall be in place of all other relief of a public nature.”
Section 2968 provides that the commissioners may at any time during the year inquire into the qualifications, examine as to the disability and needs of any person theretofore placed on such blind list, and increase or decrease the amount within the limits prescribed; and in case the board finds that any person is not qualified to draw further relief, or that such disability has been removed, in whole or in part, then the board may, at any time thereafter during such year, modify or change the amount theretofore found necessary for such relief, or remove such person from the list of those *357 qualified to draw any money for relief. It will, therefore, be seen that this statute seems to have been drawn for the purpose of carefully avoiding the defects in the statute of 1904 pointed out by the court in Lucas County v. State, supra. The relief provided for in the later statute is limited to those who are, or will become, charges upon the public or upon those not required by law to support them,, and is the only public relief that may be given to them. The provision for surgical removal of blindness, where possible, is one to prevent the person from becoming such charge. The entire matter is left to the continuing and imperative supervision of the board of county commissioners. Every safeguard has been adopted to secure the application of the money to the support of the individual and to prevent him from becoming a public charge. It is not an indeterminate annuity, unlimited in time or uncertain in its application.
The express object, and the practical provision, of the enactment is to furnish relief to the blind who are poor and needy, and to avoid the public burden.
It is not questioned that the relief of the poor is a proper public purpose.
Judge Cooley in his work on taxation (3 ed.), page 204, declares that “the support of paupers and the giving of assistance to those who, by reason of age, infirmity, or disability, are likely to become such, is, by the practice and common consent of civilized countries, a public purpose.” The power to tax for a public purpose is part of the inherent sovereignty of the state. It is a legislative power which by Section 1, Article II of the *358 Constitution is vested in the general assembly. The determination of the public purpose and objects to which it is applicable must rest in the discretion of the general assembly except as limited by the restrictions imposed by the constitution. Gholson, J., in Baker v. Cincinnati, 11 Ohio St., 542, says: “It will be observed that the provision is not, that the legislative power, ‘as conferred by the constitution’ shall be vested in the general assembly, but that the legislative power of this state shall be vested. That includes all legislative power which the objects and purposes of state government may require and we must look to other provisions of the constitution to see how far and to what extent legislative discretion is qualified or restricted.” See also Mason v. State, 58 Ohio St., 49. The court will only intervene to prevent an unreasonable or arbitrary exercise of this discretion, or a result in contravention of the fundamental law.
Mr. Justice Miller in Loan Assn. v. Topeka, 20 Wall., 655, in which case it is held that the right to tax can only be used in aid of a public object, says: “And in deciding whether, in the given case, the object for which taxes are assessed falls upon the one side or the other of the line, they must be governed mainly by the course and usage of the government, the objects for which taxes have been customarily and by long usage of legislation levied.” Outdoor relief of the poor, as distinct from relief in institutions, was fixed as part of the policy and practice of Ohio one hundred years ago.
It was early decided in Ohio that the whole subject of relieving the poor, where it is done in pur *359 suance of law, is of statutory origin and depends on statutory regulations. Trustees of Cincinnati Tp. v. Ogden, 5 Ohio, 23; Trustees v. White, 48 Ohio St., 577-8.
In Trustees v. Ogden it was held that the overseers of the poor of the proper township are bound to support a casual pauper if found within the limits of the township and requiring support, and an individual furnishing a necessary supply, after notice to the overseers to do so, may recover the amount. Judge Hitchcock, in announcing- the decision, said: “The supreme power, of the state, by legislative enactment, has imposed the obligation." The statute involved in that case was passed in February, 1816.
In Lucas County v. State, supra, the court remarks that “Section 1 of Article VII, which provides that institutions for the benefit of the insane, blind, and deaf and dumb, shall always be fostered and supported by the state, is neither a grant nor a limitation of power, but a recognition of the fact that by enlightened people such classes are treated as wards of the state." Such institutions have been fostered and supported for blind children, in order that they may be there trained, educated and fitted to assist in their own support, as well as to enable them to have in some degree the pleasures and advantages of intellectual development. But there has been no law providing for the maintenance of adult blind persons in such institutions.
These suggestions would seem to indicate the conception of duty, the public policy and the general course and usage of our state touching the subject. Since the constitution has included the blind *360 among those who shall be the objects of the solicitous consideration of the state, and since it has ever been the policy of the state to give assistance to' the poor, infirm and disabled, legislation which defines and classifies poor or needy blind persons as beneficiaries of its provisions and which does not make a capricious, arbitrary or unreasonable provision, should not be denounced by the courts as an unauthorized classification repugnant to the constitutional requirement of uniformity and equality in the operation of laws. The constitution contains no provision requiring that the relief of the poor shall be conducted and provided for in institutions, nor does it prohibit outdoor relief of the poor.
In fact, the entire system for the' establishment and maintenance of benevolent institutions and benevolent works of the state has proceeded upon the idea that the legislature in the exercise of its general legislative power was vested with authority to do whatever in its judgment the public welfare demanded, always provided that the thing done should be for a public purpose and should not take public money for the advancement of a purely private object.
This brings us to a consideration of the statute passed in April, 1913 (103 O. L., 833). In this act it is provided that there shall be established and maintained in the city of Columbus a state , institution, to mean under the act a board for the relief and benefit of the needy blind, the members of which shall be appointed by the governor.
Under Section 5 it is provided that “Any person who becomes blind while residing in this state *361 and. who has continuously resided in this state for five years prior to his application for the relief herein provided, who, by reason of loss of eyesight, is unable to provide himself or herself with the necessaries of life and has not sufficient means of his or her own so to do, shall be deemed entitled to the benefits and support of the said institution - as herein provided.”
Section 6 provides for the application by the person claiming the relief to the probate court, and Section 7 provides that the application shall be heard and determined by the probate court, that the probate judge shall thereupon determine the amount of the relief that the applicant is entitled to under said proof, not exceeding the sum of $240 per annum, and “his findings upon said facts shall be final and conclusive unless reviewed, set aside or modified by the board at their discretion.”
Section 8 provides for the levying of taxes for the purpose of creating a fund for the blind as in the act provided, and also contains the following clause: “After the passage of this act and on the demand of the state treasurer the treasurers of the respective counties shall transfer and pay over to the state treasurer all monies in their possession or that may thereafter come into their possession under present levies. for the relief of the blind.” Section 10 repeals Sections 2962 to 2970 of the General Code, which constitute the act of 1908, hereinbefore discussed.
We think it clear that by the use of the word “institutions” in Section 1 of Article VII of the Constitution it was intended to designate the places where, and the means by which, the afflictions *362 of the persons referred to may be relieved, although the term “institution” is sometimes used as descriptive of the establishment where the operations of an association are carried on and at other times it is used to designate the organized body. Gerke v. Purcell, 25 Ohio St., 244. We do not think that the use of the term “institution,” in the statute under examination here, in connection with the board which shall administer the relief provided for, contributes anything to the validity of the law. An examination of the law of 1913 will disclose that it is open to many of the objections pointed out by this court in Lucas County v. State, as well as others.
There is a broad provision in Section 5 that any person, who, by reason of loss of eyesight, is unable to provide himself or herself with the necessaries of life and has not sufficient means of his or her own so to do, shall be entitled to the benefits of the law. Therefore, such a person, although he might have children who would be able ‘and be compelled by law to support him, or who actually would be supporting him, or who might have friends or relatives who would be willing to support him, or who would be actually doing so at the time, would still be entitled to receive payment under the law. In such a case the payment of the money could not be said to be a public object, but would be, as said in the Lucas County case, the giving of a bounty pure and simple to one who had no real need for it in order to prevent his becoming a charge upon the public. Concerning the provision in Section 7, that the findings of the probate judge shall be final and conclusive unless re *363 viewed, set aside or modified by the board at their discretion, it might well be doubted whether the legislature has power to confer on an administrative board, the authority to review a final order made by a court of record. Of course, if the order of the probate court can be regarded as a judicial order, the provision for review would be invalid, for such a board cannot exercise judicial functions. But in any event the provision does not furnish a definite method of adjusting the relief to the changing conditions and needs of the beneficiary. It is not continuing in its duration and it in no way provides a proper safeguard. The legislature cannot be said to have the right to exercise the taxing power for the accomplishment of such a result. It would not be such a purpose as the state is authorized to take property^.of the citizens by tax to carry out. But there is another material infirmity in the law of 1913. Section 8 of this act requires that on the demand of the state treasurer the treasurers of the respective counties shall transfer and pay over to the state treasurer all moneys in their possession or that may thereafter come into their possession under present levies for the relief of the blind. It is conceded in the cases at bar that the county treasurer has in his possession moneys raised under the act of 1908, which were raised by taxation^ specifically for the relief of the blind, in accordanee with the provisions of that law.
In the consideration of this provision we are confronted with the plain mandate in Section 5 of Article XII of the Constitution thai “No tax shall be levied, except in. pursuance of law; and every *364 law imposing a tax, shall state, distinctly, the object of the same, to which only, it shall be applied.” The taxes in the county treasuries, which' were paid under the levies provided for in the act of 1908, can manifestly be applied only to the objects distinctly stated in the law providing for their levy. The portion of Section 8 of the law of 1913, above referred to, is in direct conflict with Section 5 of Article XII. Each county of the state has raised a fund of its own under the law of 1908 to be applied for the relief of its own blind. Necessarily the amount and the proportionate amount which each county would raise would be different from each of the other counties, and different from its proportion if originally raised by the state for state purposes. To require that this money should be turned over to the state treasurer and used as a part of a fund which belonged to the entire state to be expended for the purposes of the entire state, although the object would be similar, would produce the very inequality and injustice which the constitution intended to prevent.
Section 10 of this act repeals the sections of the General Code which constitute the act of 1908. The provision in Section 8, above referred to, for the transfer of county funds to the state treasury, was an essential provision in the law of 1913, made to prevent postponement of the relief provided for. There is no ground for the opinion that the legislature would have passed the statute without the inclusion of the section referred to.
Where an amendatory and repealing act is a substitute for the law repealed and the body of the *365 act is unconstitutional, the repealing clause is inoperative and the old law remains in force. The State, ex rel., v. Buckley, 60 Ohio St., 273-297.
For these reasons we conclude that the act of 1913 is not constitutional, and that the act of 1908 is in full force as a valid exercise of the legislative power.
Judgments of the courts below in No. 14247 will be reversed and judgment entered for the plaintiff in error. ^
The judgment in No. 14433 will be affirmed and judgment for defendant in error, and in No. 14434 the writ of mandamus prayed for will be allowed.

Judgment accordingly.

Nichols, C. J., Donahue, Wanamaker and Newman, JJ., concur in Nos. 14247 and 14434.
Nichols, C. J., Shauck, Donahue, Newman and Wilkin, JJ., concur in No. 14433.