## BOARD OF COUNTY COM'RS OF CARTER COUNTY v. REIRDON.

No. 24533. April 2, 1935.

Rehearing Denied May 21, 1935.

Marvin Shilling and John E. McCain, for plaintiff in error.

Reuel W. Little, for defendant in error.

RILEY, J. This is an appeal from a judgment obtained by defendant in error in an action brought to recover the amount paid upon three tax sale certificates and tax deeds issued by the county treasurer in which it was alleged that the tax sale was illegal.

The action was brought under the provisions of section 9739, C. O. S. 1921, as amended by chapter 30, S. L. 1925 (sec. 12749, O. S. 1931), the applicable provisions of which are:

"When lands or lots which have heretofore been, or shall hereafter be sold, and tax sale certificates or tax deeds issued by the county treasurer therefor * * * where said sale was, or is otherwise illegal * * * the county shall save the purchaser or his assigns harmless by refunding and paying to him or them the original purchase money paid thereon together * * * with interest from date of payment at six (6) per cent. per annum."

The petition contained three causes of action on three separate tax sale certificates and deeds for three separate lots in the city of Ardmore.

On November 2, 1925, the county treasurer issued the tax sale certificates involved, which show that the lots were sold on said date for the delinquent taxes for the years 1923, 1924, and 1925, to the First Securities Corporation. On the face of each certificate it is shown that the whole amount for which each lot was sold for the three years was in one sum and that the tax was street paving in district No. 70, city of Ardmore.

Each of the certificates was assigned to defendant in error on April 5, 1926. This is shown as to two of the certificates. The other certificate was lost and parol evidence was introduced showing that it was the same in form as the other two.

In February, 1928, defendant in error gave notice of application for tax deeds, and in April, 1928, tax deeds were issued by the county treasurer. It was admitted at the trial that all the certificates had been merged into tax deeds and said deeds were of record.

This action was commenced on October 6, 1931, within five years from the date when a tax deed might have first been applied for.

The plaintiff alleged in his petition that the tax sale had in 1925 was illegal and void, setting up some eleven grounds, some of which were probably good if set up against the tax deed in an action brought within one year after the deeds were placed of record, and that the tax deeds were illegal for like reasons.

The answer was a general denial and other allegations to the effect plaintiff's title under the tax deeds had never been assailed, either by the state or by any person or persons formerly owning the lots.

The trial court found generally for plaintiff, and "specifically that the tax sale certificates herein sued upon are void because of the failure on the part of its officials to make proper return and keep proper records of the sale of said certificates."

Judgment was rendered for plaintiff in the sum of $1,384.40, the full amount sued for with interest calculated to November 2, 1931, and interest from said date until paid at the rate of 6 per cent. per annum, and defendant appeals.

It is first contended that the judgment

is contrary to law, because the tax sale certificates and each of them disclosed on the face thereof that they were issued upon paving tax assessments due the c'ty of Ardmore, and that Carter county could have no interest whatever in the money.

It is asserted that the county treasurer was simply acting as the collecting agent for and on behalf of the city of Ardmore, and that the county therefore is not l'able to plaintiff, and that all this appears on the face of the petition and that defendant's demurrer to the petition should have been sustained.

If the judgment is upheld, the result will be that the purchaser at the tax sale, in this case the First Securities Corporation, paid the three delinquent paving assessments on each of the lots, together with the interest, costs, and penalties, to the county treasurer. The county treasurer, in turn, if he followed the law, paid the money over to the treasurer of the city of Ardmore. Plaintiff, as assignee of the original purchaser, will receive his money back in full from the county, so that the county will have paid the three paving installments assessed against each of the three lots.

It is hard to believe that the Legislature ever intended to enact a law which would or could be used to accomplish such an unjust and unconscionable result. It will be observed that chapter 30, S. L. 1925 (sec. 12749, O. S. 1931), makes no exception as to sales for delinquent paving tax. The act appears to have had its origin in section 15, art. 9, ch. 38, S. L. 1909.

That chapter appears to have been enacted for the purpose of providing for raising and collecting revenue for the fiscal year ending June 30, 1910, and each fiscal year thereafter, and to **codify** and revise the laws of the state relating to revenue.

The chapter deals entirely with laws relating to revenue for state, county, and municipal purposes. There was nothing whatever in the chapter relating to public improvement taxes or assessments. Section 15, of art. 9, of the act simply provided that when, on account of any mistake or a wrongful act of the treasurer, land had been sold on which no tax was due at the time, the county should save the purchaser harmless by paying him the amount of principal and interest at the legal rate from 'the date of sale. It is clear that the tax therein referred to meant nothing other than taxes levied upon an ad valorem basis, which

was the only tax mentioned in article 9 of the act.

By section 1 of chapter 205, S. L. 1919, said section was amended to read:

"When land has heretofore been or shall hereafter be sold, on which no tax was due, and a tax sale certificate issued by the treasurer thereon, the county shall save the purchaser or his assigns harmless by refunding and paying to him or them the original purchase money paid thereon, together with subsequent indorsements, with interest from date of payment at six per cent. per annum."

The effect of the amendment was to eliminate all reference to mistake or wrongful act of the treasurer and to strike out after the words "on which no tax was due" and the words "at the time" and to add "and a tax sale certificate issued by the treasurer thereon," and to extend the right of reimbursement to the assigns of the original purchaser. The latter change was the only substantial amendment.

The act was, by reference in the title and specific mention in the act, an amendment to article 9, ch. 72, of the Rev. Laws 1910, which was the chapter on revenue and taxation, and article 9 thereof had reference to ad valorem taxes.

Chapter 30, S. L. 1925 (section 1), further amended the same section so as to include "tax deeds" as well as tax sale certificates, and adding after the words on which lands or lots no tax was due, the words "or where said sale was, or is otherwise illegal."

It is upon the latter provision that plaintiff herein bases his claim. For it is not contended that there were no special or paving assessments due.

It will be observed that throughout the entire history of the statute, the only subject dealt with was that of sale of property for taxes. Nowhere are paving or other special assessments mentioned.

It is true that section 4618, C. O. S. 1921, made it the duty of the city clerk, not later than September 15th of each year, to certify all unpaid installments of special assessments for that year to the county treasurer to be by him placed upon the delinquent tax list prepared by the county treasurer and collected as other taxes are collected, and thereupon paid to the city treasurer for disbursement in accordance with the provisions of the article on street improvement. But thereunder no part of the money derived from such collections, neith-

er principal, interest, nor penalties, could in any event go to any fund belonging to the county, for by the last clause of section 4623 specifically continued in force section 37, ch. 173, S. L. 1923.

There is and always has been a clear distinction between general taxes laid on all property for the purposes of defraying the expenses of government, generally known and referred to as ad valorem taxes, and special assessments laid on the property especially benefited by a local improvement for the purpose of defraying the costs of the improvements, though the latter are generally recognized as a species of taxes.

It is inconceivable that the legislators, in enacting the statute making the county liable for reimbursement of purchasers at tax sale in the case originally mentioned and others later included, intended to make the county liable for the mistakes, errors, or wrongs of the county treasurer in the collection of special improvement assessments.

In the first place, the county could have no interest in such assessments, or the money derived therefrom. In the second place, the county treasurer is not the agent of the county in the matter of the collection of such assessments.

The object of the original section, and of each amendment thereto, was to provide a remedy for purchasers of property at tax sales and their assignees where such sales were erroneous or illegal. The sales referred to were in connection with the taxes dealt with in the particular statute of which the section was a part; and that statute deals only with the ad valorem taxes assessed and levied for the purpose of defraying the expenses of government. The application of the section as amended should be, and we think was intended to be, confined to sales for such taxes.

But, conceding that it was the intention of the Legislature to include sales made for delinquent special assessments, it was, in so far as it would result in a necessity for the county to levy and collect a tax on all the taxable property in the county to pay assessments levied against property for special improvements, beyond the power of the Legislature.

Such would be the result if the judgment obtained by plaintiff is permitted to stand. When the purchaser paid the delinquent assessments to the county treasurer, he in turn was obliged to pay the money over to the city treasurer for disbursement according to law. The penalties went into the street improvement fund of the city. The purchaser assigned his tax sale certificates to plaintiff, then obtained his tax deeds, and thereafter, concluding that his title was not good, he brought this action against the county and obtained judgment for all that was paid the county treasurer, together with interest from the date of the sale.

The only way that the judgment can be paid is by a tax levy on all the taxable property in the county for from one to three years. The bondholder would then have been paid, the holder of the tax sale certificates will have been repaid in full, and the property released from liability for such assessments.

True the trial court attempted by its judgment to reinstate the installments of special assessments upon the tax records of the county treasurer. The power so to do is doubtful indeed where the owner of the property is not a party and is not before the court. It might be pertinent to inquire for whose benefit they were restored of record. Not for the benefit of the bondholder, for he has been paid. Not for the benefit of the city, for it has been repaid in full when his judgment is satisfied. Then it could only be for the benefit of the county, and we know of no law under which the lots could be sold for the benefit of the county.

A statute which authorizes a judgment against the county implies the duty to levy a tax to pay it, unless some other fund or source is provided. No other fund or source is provided for the payment of a judgment such as this. The tax necessary to pay the judgment here involved would be a tax levied and collected, not for the use of the government, but for the benefit and use of a private person, for the enhancement of the value of the lots involved.

Of such a tax the Supreme Court of the United States in Citizens Savings & Loan Association v. Topeka, 22 L. Ed. 455, says:

"To lay, with one hand, the power of the government on the property of the citizen, and with the other to bestow it upon favored individuals to aid private enterprises and build up private fortunes, is none the less a robbery because it is done under the forms of law and is called taxation. This is not legislation. It is a decree under legislative forms."

It is beyond the power of the Legislature

to enact a statute which must, if carried out, literally lead to such a result.

We conclude, then, that it was neither the intent of the Legislature nor within its power to include sales of property for delinquent special improvement assessments only within the act so as to require the county to reimburse the purchaser or his assigns where such sales were invalid.

The judgment is reversed.

McNEILL, C. J., and BUSBY, PHELPS, and GIBSON, JJ., concur.