PARKER, Justice
(concurring specially).
I concur in the issuance of the certificate of judgment and in the dismissal of the pending motions and petitions. Dismissal, as distinct from denial, is not a decision on the merits. Thus, this Court is not denying on the merits matters of vital importance concerning the effect — or lack thereof — of Obergefell v. Hodges, 576 U.S, -, 135 S.Ct. 2584, 192 L.Ed.2d 609 (2015), on such issues as the issue of religious-liberty rights of individuals.
I concur specially to state that Oberge-fell conclusively demonstrates that the rule of law is dead. “Five lawyers”[32] — appointed to judgeships for life[33] and practically unaccountable[34] to the more than 320 million Americans they now arbitrarily govern — enlightened by “new insights” into the true meaning of the word “liberty,” determined that “liberty” means that Americans have a new fundamental right only now discovered over 225 years since the Constitution was adopted. “Five lawyers,” who have treated the Constitution as “a mere thing of wax ... which they may twist, and shape into any form they please,”[35] determined to impose their enlightenment on this nation in spite of the vast majority of the states having demo *607 cratically refused again and again to redefine the divinely initiated institution of marriage. In marching this country “forward” to their moral ideal, the “five lawyers” composing the majority in Obergefell have trampled into the dust the last vestiges of the legitimacy of the United States Supreme Court.
Obergefell is not based on legal reasoning, history, tradition, the Court’s own rules, or the rule of law, but upon thé empathetic feelings of the “five lawyers” in the majority. What the late John Hart Ely said of another decision can be' said of Obergefell: “It is bad because it is bad constitutional law, or rather because it is not constitutional law and gives almost no sense of an obligation to try to be.” John Hart Ely, The Wages of Crying Wolf: A Comment on Roe v. Wade, 82 Yale L.J. 920, 947 (1973). The majority in Obergefell does not set forth authorities that lead to its conclusion; it sets forth only sentiments that support its whim in this case to create a fundamental constitutional right. In order to reach this conclusion, the majority in Obergefell, having ascended to a new understanding of human liberty, threw off the restraints of the rule of law and history. Having by judicial will set themselves free from those “shackles,” the majority then ushered in a new era ■ of “liberty”: court-pronounced dignity. Justice Hugo Black, an Alabamian, provided an apt description of what the United States Supreme Court has done in Oberge-fell in his dissent in In re Winship, 397 U.S. 358, 384, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970):
“When this Court assumes for itself the power to declare any law — state or federal — unconstitutional because it offends the majority’s own views of what is fundamental and decent in our society, our Nation ceases to be governed according to the ‘law of the land’ and instead becomes one-governed ultimately by the ‘law of the judges.’ ”
In Cotting v. Godard, 183 U.S. 79, 84, 22 S.Ct. 30, 46 L.Ed. 92 (1901), the United States Supreme Court stated:
, “It has been wisely and aptly said that this is a government of laws, and not of men;[36] that there is no arbitrary power located in any individual or body of individuals; but that all in authority are guided and limited by those provisions which the people have, through the organic law, declared shall be'the measure and scope of all control exercised over them.”
See also Marbury v. Madison, 5 U.S. (1 Cranch) 137, 163, 2 L.Ed. 60 (1803) (“The government of the United States has been emphatically termed a government of laws, and not of men.”). By rejecting the rule of law, history, and the viewpoint of most states, the majority’s approach in Oberge-fell explicitly rejects the idea that America is a government of laws and not of men. Instead, the majority illegitimately imposed its will upon the American people. We now appear to be a government not of laws, but of “five lawyers.”
In Planned Parenthood v. Casey, 505 U.S. 833, 865-66, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992), a plurality of the United States Supreme Court stated:
“The root of American governmental power is revealed most clearly in the instance of the power conferred by the Constitution upon the Judiciary of the United States and specifically upon this Court. As Americans of each succeed *608 ing generation are rightly told, the Court cannot buy support for its decisions by spending money- and, except to a minor degree, it cannot independently coerce obedience to its decrees. The Court’s power lies, rather, in its legitimacy, a product of .substance and perception that shows itself in the people’s acceptance of the Judiciary as fit to determine what the Nation’s law means and to declare what it demands.
“The underlying substance of this legitimacy is of course the warrant for the Court’s decisions in the Constitution and the lesser sources of legal principle on which the Court draws. That substance is expressed in the Court’s opinions, and our contemporary understanding is such that a decision without principled justification would be no judicial act at all. But even when justification is furnished by apposite legal principle, something more is required. Because not every conscientious claim of principled justification will be accepted as such, the justification claimed must be beyond dispute. The Court must take care to speak and act in ways that allow people to accept its decisions on the terms the Court claims for them, as grounded truly in principle, not as compromises with social and political pressures having, as such, no bearing on the principled choices that the Court is obliged to make. Thus, the Court’s legitimacy depends on making legally principled decisions under circumstances in which their principled character is sufficiently plausible to be accepted by the Nation.”
(Emphasis added.) See also Michael H. v. Gerald D., 491 U.S. 110, 127 n. 6, 109 S.Ct. 2333, 105 L.Ed.2d 91 (1989) (“[A] rule of law that binds neither by text nor by any particular, identifiable tradition is no rule of law at all.”). Obergefell is “no judicial act at all” because .it is “without principled justification.” Casey, 505 U.S. at 865. In fact, it is without any legal justification at all. Accordingly, the United States Supreme Court’s decision in Obergefell is without legitimacy. See Republican Party of Minnesota v. White, 536 U.S. 765, 793, 122 S.Ct. 2528, 153 L.Ed.2d 694 (2002) (Kennedy, J., concurring) (“Courts, in our system, elaborate principles of law in the course of resolving disputes. The power and the prerogative of a court to perform this function rest, in the end, upon the respect accorded to its judgments. The citizen’s respect for judgments depends in turn upon the issuing court’s absolute probity. Judicial integrity is, in consequence, a state interest of the highest order.”).
I also caution against the United States Supreme Court’s inherent assertion in Obergefell that it is above the law, rather than being constrained to its constitutional function of interpreter of the law. “It is emphatically the province and duty of the judicial department to say what the law is,” Marbury, 5 U.S. (1 Cranch) at 177— not to make it up as we go along. The majority in Obergefell was even so brash as to set aside the Supreme Court’s own established rules in ignoring the requirement that, in order for a fundamental right to be recognized, it must be rooted in our nation’s history. History has shown a proclivity to ignore the rules when they get in the way of a desired goal. Justice Joseph Story warned of such a practice:
“A more alarming doctrine could not be promulgated by any American court, than that it was at liberty to disregard all former rules and decisions, and to decide for itself, without reference to the settled course of antecedent principles.
“This known course of proceeding, this settled habit of thinking, this conclusive effect of judicial adjudications, was in the full view of the framers of the constitution. It was required, and en *609 forced in every state in the Union; and a departure from it would have been justly deemed an approach to tyranny and arbitrary power, to the exercise of mere discretion, and to the abandonment of all the just checks upon judicial authority.”
Joseph Story, Commentaries on the Constitution of the United States 127 (1833). Justice Sutherland stated the following in his dissent in West Coast Hotel Co. v. Parrish, 300 U.S. 379, 404, 57 S.Ct. 578, 81 L.Ed. 703 (1937):
“The judicial function is that of interpretation; it does not include the- power of amendment under the guise of interpretation. To miss the point of difference between the two is to miss all that the phrase ‘supreme law of the land’ stands for and to convert what was intended as inescapable and enduring mandates into mere moral reflections.”
One should not be so naive to think that Justice Sutherland was warning of an event that has not already come to pass. In fact, Obergefell demonstratively evinces that the “mere moral reflections” of the judiciary’s constitutional role no longer give any pause for reflection at all to a majority of the Justices on the United States Supreme Court. There appears to be no restraint on the judiciary, because “five lawyers” believe that they may simply decide, with no legal support whatsoever, that a particular fundamental right be created because they think it fair. This is not the rule of law, this is despotism[37] and tyranny.[38]
Despotism and tyranny were evils identified in the Declaration of Independence as necessitating the break with King George and Great Britain. In his dissent in Loan Association v. Topeka, 87 U.S. (20 Wall.) 655, 669, 22 L.Ed. 455 (1874), Justice Clifford defined judicial despotism as follows:
“Courts cannot nullify an act of the State legislature on the vague ground that they think it opposed to a general latent spirit supposed to pervade or underlie the constitution, where neither the terms nor the implications of the instrument disclose any such restriction. Such a power is denied to the courts, because to concede it would be to make the courts sovereign over both the constitution and the people, and convert the government into a judicial despotism.”
(Footnotes omitted; citing Walker v. City of Cincinnati, 21 Ohio St. 14, 8 Am. Rep. 24 (Ohio 1871).) Further, Montesquieu, in his enduring work “The Spirit of the Laws,” stated:
“In despotic governments there are no laws; the judge himself is his own rule. There are laws in monarchies; and where these are explicit, the judge conforms to them; where they are otherwise, he endeavours to investigate their spirit. In republics, the very nature of the constitution requires the judges to follow the letter of the law; otherwise the law might be explained to the prejudice of every citizen, in cases where their honour, property, or life is concerned.”
*610 Charles de Secondat, Baron de Montesquieu, The Spirit of Laws (Thomas Nugent trans. 1752) (Kitchener 2001) (emphasis added).[39] Obergefell is the latest example of judicial despotism. It is a decision not based on law, but on the bare majority’s philosophy of life. For the states to honor such a decision as legitimate is to bow our knee to the self-established judicial despots of America. “[T'jyranny is the exercise of power beyond right, which no body can have a right to.” John Locke, Second Treatise of Government 101 (C.B. Mac-pherson ed., 1980) (1690). As Thomas Jefferson wrote, “experience hath shewn, that even under the best forms of government those entrusted with power have, in time, and by slow operations, perverted it into tyranny.” Thomas Jefferson, A Bill, for the More General Diffusion of Knowledge, June 18, 1778, 2 The Works of Thomas Jefferson 414 (Paul Leicester Ford ed., G.P. Putnam’s Sons, 1904). ' ■
Edward S. Corwin, who popularized the term “judicial review,” only settled oh that wording for that phrase in 1909.[40] Corwin initially used the term “the doctrine of judicial paramountcy.”[41] Corwin’s original term captures the reality of judicial supremacy that has grown out of judicial review. But the version of judicial supremacy reflected in the majoiity’s decision in Obergefell is far beyond earlier manifestations of judicial supremacy. As employed by the majority in Obergefell, it is the implicit claim to the supreme authority of the federal judiciary to decide any important political or social question confronting our country, whether the Constitution authentically addresses it or not (although the judges will contend that it does). Chief Justice Roberts refers to this as “the majority’s extravagant conception of judicial supremacy.” Obergefell, 576 U.S. at -, 135 S.Ct. at 2624 (Roberts, C.J., dissenting). He describes the majority view of judicial supremacy as follows:
“The role of the Court envisioned by the majority today ... is anything but humble or restrained. Over and over, the majority exalts the role of the judiciary in delivering social change. In the majority’s telling, it is the courts, not the people, who are responsible for making ‘new dimensions of freedom ... apparent to new generations,’ for providing ‘formal discourse’ on social issues, and for ensuring ‘neutral discussions, without scornful or disparaging commentary.’ Ante, at 2596-2597.”
Id. Chief Justice Roberts then puts this self-aggrandizing claim of power in historical context: “Those who founded our country would not recognize the majority’s conception of the judicial role. They after all risked their lives and fortunes for the precious right to govern themselves. They *611 would never have imagined yielding that right on a question of social policy to unaccountable and unelected judges.” 576 U.S. at —, 135 S.Ct. at 2624. To use the term applied by Justice Scalia, this is an anti-constitutional “judicial Putsch.” 576 U.S. at —, 135 S.Ct. at 2629 (Scalia, J., dissenting).
As justices and judges on state courts around the nation, we have sworn an oath to uphold the United States Constitution. We have not sworn to blindly follow the unsubstantiated opinion of “five lawyers.” As the Supreme Court of Utah boldly stated:
“The United States Supreme Court, as at present constituted, has departed from the Constitution as it has been interpreted from its inception and has followed the urgings of social reformers in foisting upon this Nation laws which even Congress could not constitutionally pass. It has amended the Constitution in a manner unknown to the document itself. While it takes three fourths of the states of the .Union to change the Constitution legally, yet as few as five men who have never been elected to office can by judicial fiat accomplish a change just as radical as could three fourths of the states of this Nation. As a result of the recent holdings of that Court, the sovereignty of the states is practically abolished, and the erst while free and independent states are now in effect and purpose merely closely supervised units in the federal system.
[[Image here]]
“... We ... long for the return to the days when the Constitution was a document plain enough to be understood by all'who read it, the meaning of which was set firmly like a jewel in the matrix of common sense and wise judicial decisions.” , .
Dyett v. Turner, 20 Utah 2d 403, 405-06, 439 P.2d 266, 267-68 (1968). An illegitimate decision is due no allegiance; our allegiance as judges is to the United States Constitution.
The rule of law is of utmost importance to the sustainability of this nation and the foundation of American exceptionalism. Taking a line from the late Ronald Reagan, we as justices and judges have a crucial role to “preserve to our children this [constitutional republic based upon the rule of law], the last best hope of man on earth, or we’ll sentence them to take the last step into a thousand years of darkness.” [42]

.Chief Justice Roberts referred to the Obergefell majority three times as "five lawyers,” 576 U.S. at -, 135 S.Ct. at 2612, 2624 (Roberts, C.J., dissenting), instead of Justices, thus caustically pointing out that the five were not acting in a judicial role.

. The dissents in Obergefell refer eight times to "unelected” judges.

. The dissents in Obergefell refer twice to the "unaccountable” judges.

. Thomas Jefferson, Letter to Judge Spencer Roane, Sept, 6, 1819, 12 The Works of Thomas Jefferson 137 (Paul Leicester Ford ed,, G.P. Putnam’s Sons, 1905).

. The historic phrase “a government of laws and not of men” was used by John Adams in the Massachusetts Declaration of Rights, pt. 1, art. 30. The State of Alabama adopted John Adams’s provision almost verbatim in Art. Ill, § 43, Ala. Const.1901, 'thus incorporating this phrase into our organic law.

. Despotism has been defined as “[a]bsolute power; authority unlimited and uncontrolled by men, constitution, or laws; and depending alone on the will of the prince..,’.” IN. Webster, An American Dictionary of the English Language 59 (1828) (emphasis added).

. Tyranny has been defined as ‘‘[ajrbitrary or despotic. exercise of power; exercise of power over subjects and others with a rigor not authorized by law or justice, or not requisite for the purposes of government.” 2 N. Webster, An American Dictionary of the English Language 99 (1828).

.Montesquieu was the most frequently cited source in the establishment of the three branches of government. Matthew P. Bergman, Montesquieu's Theory of Government and the Framing of the American Constitution, 18 Pepp. L.Rev. 1, 24 (1990). “Among the delegates to the Convention, Montesquieu’s writings were taken as 'political gospel.’ Many such delegates read Montesquieu as preparatory material. Indeed, besides studying Montesquieu himself, Madison translated sections of The Spirit of the Laws for George Washington. Washington’s notes reveal that he also studied Montesquieu in preparation for the Convention.” Id.

. ■ Matthew J. Franck, "Introduction to the Transaction Edition,” Edward S. Corwin, The Doctrine of Judicial Review: Its Legal and Historical Basis and Other Essays, at xxi n. 46 (Transaction Publishers, 2014) (citing Edward S. Corwin, The Supreme Court and the Fourteenth Amendment, 7 Mich. L.Rev. 643 (1909)).

. Franck, supra, at xxi n. 45 (citing Edward S. Corwin, The Supreme Court and Unconstitutional Acts of Congress, 7 Mich. L.Rev. 606 (1906)).

. Ronald Reagan speech "A Time for Choosing” (also known as "A Rendezvous with Destiny”), October 27, 1964.